LAMBERT ET AL. *v.* CONNECTICUT FIRE INS. CO.

(Decided December 24, 1934.)

*Messrs. Paxton & Seasongood,* for plaintiffs.
*Messrs. Harmon, Colston, Goldsmith & Hoadly,* for defendant.

Ross, J.   It is alleged in the petition that the defendant, Connecticut Fire Insurance Company, agreed with The Princess Garment Company to insure its stock of merchandise in a store at 905 West Liberty street in the city of Cincinnati, and agreed that the policy should be issued in the name of Ann Lambert, an employee of the garment company; that such employee was in full charge of such store, being responsible for and accountable to The Princess Garment Company for the stock in such store and the proceeds thereof; that she received as compensation a salary and commission on sales; that the policy was to be issued in the name of Ann Lambert, because the gar-

ment company did not wish its wholesale customers in the neighborhood to know that it was retailing its goods in competition with such customers; that pursuant to such agreement a policy was issued in the name of Ann Lambert; that a fire occurred with consequent loss to the garment company, and that the insurance company refuses to pay such loss.

Judgment is asked against the insurance company for the amount of the loss; and, in the alternative, it is asked that the policy may be reformed to express the intention of the parties.

The answer avers that the defendant issued a policy of insurance to Ann Lambert, insuring her against loss by reason of damage by fire to a stock of merchandise located at the store mentioned in the petition, and further avers that the merchandise in such store was the property of The Princess Garment Company. The defendant denies the issuance of the policy sued on, denies that it received any premium from The Princess Garment Company, and avers that Ann Lambert was never the sole, unqualified owner of the property in the store.

The facts are unusually clear and simple. A solicitor of one Spragens, an agent for the defendant insurance company, solicited The Princess Garment Company for fire insurance through its employee Lulu Brookins, who acted as its cashier at the store in question. The solicitor was distinctly told that the merchandise in the store was the property of the garment company, that the insurance was to cover loss to the garment company, but that the company, however, did not want the policy issued in its name, because it was desired that its wholesale customers should not know it was also engaged in the retail business. It was agreed, however, between the cashier and the insurance solicitor that a policy in conformity to such understanding should be issued in the name of Ann Lambert, the manager of the store, insuring the company

against loss by fire, and Ann Lambert knew of this agreement.

The solicitor, however, did not communicate these facts to his employer, the agent for the insurance company. The policy was delivered just as it was agreed upon. The garment company, through its cashier, paid the premium in cash to the solicitor. We quote the following from the record:

"Q. Tell in your own words what you told Mr. Ellerman?

"A. Mr. Ellerman happened to pass the Bargain Shop. It was on a Saturday evening, and he saw me in the store and he came in and said, 'Is this your store?' I said, 'No, this is the property for the firm for whom I work.' He said, 'Who is that?' I said, 'The Princess Garment Company.' And in the course of conversation he brought up the question of insuring the stock.

"The Court: That is, he solicited the insurance?

"A. Yes, he solicited the insurance, and I asked him at the time, I said, 'Mr. Ellerman, could a policy be issued whereby the name of the Princess Garment Company would be eliminated from a transaction, so the name would not appear?' He said, 'Why do you ask that?' I said, 'Because my firm does not want any of the customers in the neighborhood to know this store is the Princess Garment Company store.' I said to Mr. Ellerman, 'Could this Princess Garment Company merchandise be issued in the name of Ann Lambert?' "

"Q. (Interrupting.) 'Issued? You mean insured?'

"A. Insured. He said, 'Who is Ann Lambert?' I said, 'The lady who has charge of running the store.' He asked what her duties were, and I said, 'Running the store, selling the merchandise, and the receipts each day are turned over to me at night.' And he studies for a few moments, and he said, 'I think I can take care of that all right. I will deliver the policy

in a few days.' I think it was a matter of three or four days when Mr. Ellerman came in one evening and found me at the store and delivered the policy to me.

"The Court: You paid him in cash?

"A. I paid him in cash. It is a rule—this is a small store and any bills involved, we pay for in cash."

"Q. What is your name please? A. Bernhardt Ellermann.

"Q. Where do you live, Mr. Ellermann? A. 826 Findlay, City.

"Q. When you solicited this policy that has been admitted, did Mrs. Brookins tell you the merchandise to be insured was the property of the company she worked for? A. Yes, sir.

"Q. Your answer is yes? A. Yes, sir. * * *

"Q. And then she asked whether the insurance could be made in the name of Ann Lambert?

"A. I did make a remark about some rules where another clause must appear, and they said, 'No, absolutely, they did not want the Princess Garment Company mentioned.'

"Q. So you covered the property in the name of Ann Lambert?

"A. So I thought, let it go at that—

"The Court: Did you report this conversation to Mr. Spragens in the office?

"A. No.

"The Court: Why not?

"A. I thought, what's the difference.

"The Court: Tell me why not.

"A. I didn't think it was necessary. * * *

"Q. And she paid the premium? A. Yes.

"Q. The only thing you told Mr. Spragens was to issue a policy in the name of Ann Lambert?

"A. That is it."

Both the solicitor and the cashier were under the impression that the legal effect of the policy delivered was to insure the garment company against loss. Any

other conclusion must be based upon the theory that the solicitor intended to perpetrate a fraud upon the garment company. When two conceptions of a transaction are possible, one suggesting fraud and the other an honest purpose, the latter will always be given effect. In other words, fraud is never presumed as against an innocent construction justified by the facts.

The solicitor was acting purely within the scope of his authority in soliciting the insurance. His knowledge was that of his employer, the agent for the company; and, in turn, through such agent, the insurance company is bound by such knowledge. *Foster* v. *Scottish Union & Natl. Ins. Co. of Edinburgh,* 101 Ohio St., 180, 127 N. E., 865. Even a sub-agent of a life insurance company has been held to be the direct representative of the company in respect to that branch of the business intrusted to him. *Massachusetts Life Ins. Co.* v. *Eshelman et al., Exrs.,* 30 Ohio St., 647.

The authority of a life insurance agent or solicitor has been held to be much more limited in scope than that of a solicitor or agent for a fire insurance company. *John Hancock Mutual Life Ins. Co.* v. *Luzio,* 123 Ohio St., 616, 176 N. E., 446. At page 624 of the opinion the court says:

''Some of the decisions in this state relied upon by counsel for defendant in error relate to powers of fire insurance agents, and their authority to waive certain provisions in fire insurance policies solicited, executed, and delivered by them. Section 9586, General Code, provides that an agent who solicits fire insurance shall be held to be the agent of the company. Section 9583, General Code, requires agents of this class of insurance to examine the buildings or structures insured and *to fix their insurable value.* It has therefore been held that under the peculiar provisions of that statute, requiring the company's agent to inspect buildings and structures and to fix their insurable value, the company becomes responsible for the

acts of its agent if there be no intentional fraud on the part of the insured. *Queen Insurance Co.* v. *Leslie,* 47 Ohio St., 409, 24 N. E., 1072, 9 L. R. A., 45; *Webster* v. *Dwelling House Ins. Co.,* 53 Ohio St., 558, 42 N. E., 546, 30 L. R. A., 719, 53 Am. St. Rep., 658. So that when we consider the broader statutory powers conferred on a fire insurance agent in comparison with the more limited powers exercised by soliciting agents of life insurance companies, this distinction cannot be overlooked. Those two classes of insurance are clearly. distinguishable. The case of *Foster* v. *Scottish Union & National Ins. Co.,* 101 Ohio St., 180, 127 N. E., 865, cited and relied upon by counsel for defendant in error, related, not to life, but to fire insurance companies, where the powers conferred on their agents are much broader, made so by statute and custom. The case of *Ohio Farmers Ins. Co.* v. *Cochran,* 104 Ohio St., 427, 135 N. E., 537, likewise is a fire insurance case. The agents of fire insurance companies ordinarily have the right to bind their companies before they actually issue the policy, to attach riders thereto, to make deliveries thereof, and to pass upon the insurability of the property. They are clothed with powers not given to mere soliciting agents, who are employed to sell life insurance but have no authority to pass upon the insurability of the applicants.''

The parties entered into an oral contract of insurance. The policy was simply an incident of the contract. Upon this theory alone, the garment company would be entitled to recover. *State Auto Mutual Ins. Co.* v. *Robinette, Admr.,* 47 Ohio App., 22, 189 N. E., 857.

But the insurance company now claims that the policy did not cover the garment company because it was made out to Ann Lambert, who did not own the property, having at most only a qualified interest therein, and the policy of course did not name the garment company as the insured. It is the contention of

the insurance company that neither can recover. If such is the case, both the cashier and the solicitor must have been mistaken as to the legal effect of the policy delivered in conformity with the agreement given. However, there is no occasion to reform the instrument. It in terms was exactly what both intended, and it surely cannot be successfully claimed that the garment company intended to accept a policy which would not insure its loss. Just as plainly, we will not presume that the insurance company intended to deliver an instrument which would not insure the company against its loss. The parties were simply in error as to the legal effect of that which they had contracted and agreed should represent the assurance to the garment company.

A very similar case is found in *Globe Ins. Co.* v. *Boyle,* 21 Ohio St., 119. In that case an executrix accepted a policy, payable to her, under the impression that the houses belonging to the heirs and devisees were insured. The court decreed reformation to express the legal effect which the parties intended. The statement and syllabus read:

"In a fire insurance policy on property devised to the testator's children, and E. W. B., his widow and executrix, the party insured was described as 'Mrs. E. W. B., Executrix.' In an action by the widow and children to recover the amount of the policy, it was averred in the petition that the insurance was intended, and understood by the parties to the policy, to be for the benefit of the owners of the property; and, with the prayer for judgment, asked that, if necessary, the contract might be reformed. *Held:*

"1. Evidence of the conversation of the agent of the assured and the underwriter in relation to the object of the policy and the interest to be insured, was admissible, with a view to the reformation of the contract. But whether admissible, not to vary the con-

tract, but merely to aid the court in interpreting its true meaning—*quere*.

"2. When an instrument, by mutual mistake of the parties as to the legal effect of the terms used, fails to carry out their intention, it may be reformed in a proper proceeding, for that purpose."

See, also, to the same effect, *Cincinnati, I. & W. R. Co.* v. *Indianapolis Union Ry. Co.*, 36 F. (2d), 323.

Thus we see no difficulty in finding that the garment company is entitled to have the intention of the responsible parties carried out, that is that the merchandise in its store be insured against loss by fire. Such was their intention, and such will be decreed to be the legal effect of the instrument delivered to the garment company. A fire having occurred, the garment company is entitled to the amount of such loss, which amount has been agreed upon.

*Decree accordingly.*

HAMILTON, P. J., and CUSHING, J., concur.