NELLAS, APPELLEE, *v.* MANUFACTURERS CASUALTY INS.
CO., APPELLANT.

(No. 4360—Decided December 2, 1953.)

*Messrs. Harris, Sacks & Subrin,* for appellee.
*Messrs. Walker, Alpeter, Reed & Diefenbach,* for
appellant.

HUNSICKER, J. This is an appeal on questions of
law.

William G. Nellas, the appellee, herein called Nellas,
operated a tavern in the city of Barberton, Ohio, and,
desiring public liability insurance, called one Joe Hill
to effect the insurance coverage. Mr. Hill was not an
agent of any specific insurance company, but, as a so-
licitor, placed, through Carter-Jenkins Agency of Ak-
ron, Ohio, some of the insurance business he obtained.

Mr. Hill, accompanied by James R. Dunning, the
president of Carter-Jenkins Agency, the authorized
agent of the appellant, Manufacturers Casualty Insur-
ance Company, herein called Casualty Company, went
to the Nellas tavern in September, 1949. Upon inspec-
tion of the premises, they determined the premium
payment necessary to buy the type of insurance which
Nellas desired. Upon leaving the tavern, Mr. Dunning
said to Nellas, concerning the purchase of the insur-
ance, "Whenever you gentlemen are ready, let me
know, or let Joe know." Mr. Dunning testified that

Mr. Hill was a solicitor affiliated with the Carter-Jenkins Agency, saying "they are the same as a salesman, only we look upon them as independent contractors."

Mr. Hill received a call on September 16, 1949, from Nellas, who said that he wished to buy the insurance which was discussed a day or two before when Hill and Dunning were out to the tavern. Mr. Hill then called the Carter-Jenkins Agency, and asked one of the girls in the office to issue the policy of public liability insurance. Mr. Hill immediately, after this phone call, told Nellas that the insurance was in effect.

The policy of insurance was mailed to Nellas on September 22, 1949, bearing an effective date beginning September 19, 1949.

On September 18, 1949, one William Malone, an invitee, suffered an injury in the Nellas tavern. When this injury was reported, through Mr. Hill, to the Carter-Jenkins Agency, and through them to appellant, Casualty Company, the Casualty Company denied any liability, stating that the policy did not become effective until September 19, 1949. Mr. Malone thereafter brought suit against Nellas, and such action was settled by Nellas, at the time of trial, for $750, plus attorney fees of $250, and the court costs of $12.45, or a total of $1,012.45.

Nellas then brought an action against the Casualty Company, claiming that, upon representation of the insurance solicitor, Mr. Hill, his policy became effective on September 16, 1949, at the time Mr. Hill notified the authorized agent, Carter-Jenkins Agency, of the placing of the insurance, and then informing him, Nellas, that he had public liability insurance coverage.

At the trial in the Court of Common Pleas, the trial judge charged the jury, in part, as follows:

"Did Mr. Hill receive a request from the plaintiff for coverage some time before that Sunday when the

injury occurred at the place, and did Mr. Hill, having received a request for coverage before that date, assure the plaintiff that he was covered. The plaintiff says that is true. The defendant says it is not true. That is the only question you have to determine, for if you find by the greater probability of the truth that it is true, then you should return a verdict for the plaintiff in the amount of $1,012.45. If you find there is not a greater probability of the truth in favor of what the plaintiff says, then you should return a verdict for the defendant.''

The jury returned a verdict against the appellant, and in favor of Nellas, for the amount prayed for, and a judgment on the verdict was then entered by the trial court. It is this judgment that is before this court for review.

The appellant, Casualty Company, says that the trial court should have directed a verdict in its favor, because, before any action could be brought on the policy, an action to secure a reformation of the policy must be sustained. The appellant also claims that the trial court erred in its instructions to the jury:

''(a) In refusing to submit the question as to whether Mr. Hill was agent for the defendant.

''(b) In ruling that the only question for the jury was whether Mr. Hill received a request from the plaintiff for coverage prior to the Sunday when the injury occurred.''

In consideration of the claim that the action in the trial court was upon a written policy of insurance whose effective date was September 19, 1949, and that such policy must be reformed before an action will lie, it is to be noted that the petition is based upon the claim that a contract of insurance was entered into on September 16, 1949. The petition does contain an allegation that a policy of insurance, containing all the

terms and conditions of the agreement of September 16, 1949, except as to the date when it became effective, was issued to Nellas on September 19, 1949. Since the petition disclosed that the action was being brought on the oral contract of insurance, and not on the written policy of insurance issued on September 19, 1949, the claim that Nellas must first secure a reformation of the agreement is not well taken.

The chief complaint of the Casualty Company concerns the charge of the court, which in effect stated that, as a matter of law, Mr. Hill was the agent for the appellant, with authority to enter into the contract of insurance.

It is well settled that the law itself makes no presumption of agency. In the instant case, however, we are not confronted with a presumption of agency, for Mr. Dunning, president of Carter-Jenkins Agency, the authorized agent of the Casualty Company, said that Mr. Hill was the solicitor for his agency, and, further, when talking to Nellas, said that, if insurance was desired, he, Nellas, should notify either Mr. Hill or Mr. Dunning.

For whom, then, was Mr. Hill acting when a day or two later he phoned to the Carter-Jenkins Agency, and ordered the insurance effective on that day—to wit, September 16? He was at that time, from the testimony of Mr. Dunning, the agent of Carter-Jenkins Agency, the admitted authorized agent of the appellant, who thereafter issued the policy of insurance to Nellas.

In this case we are confronted with the effect of Section 9586, General Code (Section 3929.27, Revised Code), which was a statute entitled "Solicitor agent of company" and found in Chapter 1 (General Provisions) of Subdivision II (Insurance Upon Property and Against Certain Contingencies) of Division III

(Insurance Companies) of Title IX (Private Corporations) of Part Second of the General Code of Ohio. This statute read as follows:

"A person who solicits insurance and procures the application therefor, shall be held to be the agent of the party, company or association, thereafter issuing a policy upon such application or a renewal thereof, anything in the application or policy to the contrary notwithstanding."

If such statute was effective as to an application for public liability insurance, the question for the jury was: Did Mr. Hill, as the insurance solicitor, receive the application on September 16, and at that time notify the authorized agent of the appellant Casualty Company to immediately issue the insurance, and, after that conversation with such agent, did Mr. Hill notify Nellas that the insurance coverage was effected?

In the case of *Fay, Admr., v. Swicker,* 154 Ohio St., 341, 96 N. E. (2d), 196, the court said, at p. 346:

"It is a query whether this section is applicable to any contracts of insurance except those concerning buildings and structures. The section stems from an act 'to regulate contracts of insurance of buildings and structures,' enacted March 5, 1879 (76 Ohio Laws, 26, Section 2). It was coupled with present Section 9583, General Code, which requires agents in this class of insurance to examine the buildings or structures insured and to fix their insurable value.

"Section 9586, General Code, was amended in 1904 (97 Ohio Laws, 160), but still carried the designation that it concerned insurance on buildings and structures. The section was codified in the Revised Statutes of 1880 under the heading, 'insurance companies other than life,' and it was not until the revision of the Code in 1910 that the section received its present number and was placed under the general provisions in

respect to insurance upon property and against certain contingencies."

The application of the statute (Section 9586, General Code) to situations with respect to fire insurance has been pased upon by the courts in many cases. *Hall* v. *Franklin Fire Ins. Co.,* 149 Ohio St., 216, 78 N. E. (2d), 360; *John Hancock Mutual Life Ins. Co.* v. *Luzio,* 123 Ohio St., 616, paragraph three of syllabus, 176 N. E., 446; *Krumm* v. *Jefferson Fire Ins. Co.,* 40 Ohio St., 225; *Lambert* v. *Connecticut Fire Ins. Co.,* 49 Ohio App., 483, 197 N. E., 349; *Northwestern National Ins. Co.* v. *Ferstman,* 42 Ohio App., 55, 181 N. E., 499; *Mechanics & Traders Ins. Co.* v. *Himmelstein,* 24 Ohio App., 29, 155 N. E., 806.

There are few reported cases where the force and effect of such statute has been held applicable in other types of insurance. *State Auto Mutual Ins. Assn.* v. *Spileski,* 10 Ohio Law Abs., 618 (auto liability); and *National Surety Co.* v. *Bohn,* 11 Ohio Law Abs., 113 (credit insurance), affirmed in 125 Ohio St., 537, 182 N. E., 506.

In the case of *John Hancock Mutual Life Ins. Co.* v. *Luzio, supra,* the court clearly pointed out the difference in the nature of the duties of a solicitor for life insurance and a solicitor for fire insurance. The insurability of one seeking life insurance usually depends upon an examination by a skilled medical examiner, whereas the insurability of one seeking fire insurance does not depend upon a technical or skilled examination of the premises, but rests principally upon the value of the premises, the amount of insurance desired, and the fixed rate of premium for premises of the kind and character sought to be insured.

The similarity, in so far as a fire insurance risk is concerned, and the nature of the contingencies for which insurance is desired in other types of liability,

such as personal liability insurance and property damage insurance, is readily apparent. In such types of insurance, there need be no examination by a skilled person. In addition, liability for injury to persons or damages to property is present at all times to one who is engaged in any commercial transaction. A similar liability to respond in damages may arise in the everyday life of an individual, even though he may not be engaged in business.

Thus, from the very nature of the contingencies for which public liability insurance is purchased, and the similarity in conducting the sale of fire insurance policies and public liability policies, we believe that Section 9586, General Code, was applicable in the situation presented by the instant case.

In the above discussion with respect to the nature of fire insurance and public liability insurance, we have sought in part to show that, in the case now before us for review, the statute (Section 9586, General Code) was properly applied by the trial court. There is another and more efficient reason why the statute had application to the instant case.

As we stated earlier, Section 9586, General Code, was found in Chapter 1, entitled "General Provisions," of Subdivision II, entitled "Insurance Upon Property and Against Certain Contingencies." Section 9510, General Code, of such subdivision, as amended effective August 6, 1941, said in part:

"A company may be organized or admitted under this chapter to:

"* * *

"2. Make insurance on the health of individuals and against personal injury, disablement or death, resulting from traveling or general accidents by land and water; make insurance against loss or damage resulting from accident to property, from cause other than fire or lightning; guarantee the fidelity of persons

holding places of public or private trust, who are required to, or, in their trust capacity do receive, hold, control, disburse public or private moneys or property; guarantee the performance of contracts other than insurance policies, and execute and guarantee bonds and undertakings required or permitted in all actions or proceedings, or by law allowed; make insurance to indemnify employers against loss or damage for personal injury or death resulting from accidents to employees or persons other than employees and to indemnify persons and corporations other than employers against loss or damage for personal injury or death resulting from accidents to other persons or corporations.''

Thus it is seen that, by this section, insurance other than fire was provided for, and the very type of insurance under consideration was specifically mentioned therein. The general provisions in this subdivision, in which Section 9586, General Code, was a part, must be held to apply to all forms of insurance mentioned in Section 9510, General Code.

It therefore follows that one who solicits and takes an application for insurance of the type set out in the instant case, upon which application a policy is thereafter issued, is deemed to be the agent of the company issuing such policy, ''anything in the * * * policy to the contrary notwithstanding.''

When Mr. Hill accepted the application of Nellas and notified Carter-Jenkins Agency, the authorized agent of the appellant Casualty Company, to put the insurance into effect, and told Nellas that such insurance was in full force from the time of such notification, he, Mr. Hill, was the agent of the appellant Casualty Company.

We determine that the trial court did not commit error prejudicial to the rights of the appellant when, in its charge to the jury, it stated in effect that, as a

matter of law, Mr. Hill, the insurance solicitor, was the agent of the appellant Casualty Company at the time he accepted the application of Nellas for the public liability policy.

We have examined the claimed errors, and find none prejudicial. The judgment is affirmed.

*Judgment affirmed.*

DOYLE, P. J., and STEVENS, J., concur.