DECISION AND JUDGMENT ENTRY
This is an appeal from a grant of summary judgment to defendant-appellee, Westfield Companies ("Westfield"), by the Lucas County Court of Common Pleas. Appellant, Bayes, Inc. ("Bayes"), sets forth the following assignments of error:
 "A. The Trial Court Erred in Granting Appellee's Summary Judgment."
 "B. The Trial Court Erred in Denying Bayes' Summary Judgment."
 "C. The Trial Court Erred in dismissing Bayes' Fraud Claim."
In 1996, Bayes entered into an agreement with Brent Industries. Bayes was to supply the piping and install the hydraulic system for a commercial laundry that Brent Industries ("Brent") was building. Bayes subcontracted with Bertsch Company (Bertsch") for the piping for the hydraulic system. The specifications for the piping required that it be "pickled, oiled and capped."
After the installation work was completed, Brent started up the system, but it failed due to contamination in the system. That is, there was debris in the pipes that damaged the machinery used in the system. Brent demanded that Bayes pay the cost of replacement equipment, reimburse Brent for its "down time" and make the system operational. Bayes assumed responsibility for repair of the system and as a result became liable to Ellis Corporation for the cost of replacement parts. Bayes notified Westfield of the claims against it in September 1996 and December 1996.
Westfield conducted an investigation of the claims. The initial reports on Westfield's investigation reveal that Westfield and Bayes discussed the fact that Bayes never flushed the system prior to start up. Bayes told Westfield that it "was not instructed to flush the system after hooking up all of the piping." According to the report, a Bertsch representative told Bayes that it was unnecessary because "they used clean capped pipe."
Westfield hired James S. Foster, Ph.D., P.E., to examine parts of the hydraulic system. Dr. Foster examined and analyzed a sample of the pipe used in the Brent project, an exemplar pipe that was cleaned and capped, two bottles of the hydraulic fluid used in the system, two filter elements, and two pieces of note paper with particulate matter wiped from a part of a disassembled check valve.
Dr. Foster observed that the sample of piping from Brent's hydraulic system contained much more particulate matter than the exemplar. He was able to remove the particles using a plastic washer attached to a "shotgun cleaning rod." He also noted that a comparison of the pipe used in the hydraulic system and the exemplar indicated that both were pickled "on the inside but to substantially different degrees." Dr. Foster concluded that this portion of the investigation showed "that the pipe used at the job site still contained a substantial amount of mill scale on the inside wall which could be dislodged and separate[d] into the hydraulic fluid when the hydraulic system was started up." While he was unable to gain any useful information from the remaining samples at that point, Dr. Foster stated that the pipe used in Brent's hydraulic system and the exemplar "clearly point to the pipe as the source of contamination." In this expert's opinion, the contamination was incomplete pickling of the piping, allowing a significant amount of mill scale to remain inside the pipes at the time of installation and causing the system to fail upon start up.
Based on Dr. Foster's opinion, Westfield rejected Brent's claim, stating, "[I]t is our conclusion that our insured is not responsible for your damages, and therefore, we are unable to make any payment for your claim." Westfield also sent a reservation of rights letter to counsel for Bayes that read, in material part:
 "In addition, please be advised that Westfield Companies will not be bound by any agreements, financial or otherwise, which Bayes, Inc. may enter into with Brint [sic] Industries, Ellis Corporation, or any other interested party to this matter since we have determined Bayes, Inc. is not liable for these damages."
After Westfield rejected the claims, Bayes negotiated and settled Brent's claim and paid Ellis Corporation for the replacement parts. In a subsequent lawsuit involving Bertsch, an expert witness provided an opinion that Bayes' negligence in failing to flush out the piping system prior to operation "was one of the proximate causes of the system failure." Bayes notified Westfield of this opinion in April 1999, again requesting that Westfield provide coverage for the claims of Brent and Ellis Corporation.
Upon failing to receive any response from Westfield, Bayes filed the instant declaratory judgment action, asserting breach of the insurance contract, bad faith and fraud and requesting a declaratory judgment finding that the claims arising from the Brent project were entitled to coverage under the Westfield general liability commercial policy. Bayes also set forth claims for punitive damages.
Westfield filed an answer and a counterclaim maintaining that Bayes breached the insurance contract by settling the Brent claim without its consent. Westfield also filed a motion to dismiss Bayes' fraud claim for failure to satisfy the "particularity" requirement of Civ.R. 9(B). The trial court granted the motion to dismiss, finding that the allegations in the complaint creates "merely an inference of possible material facts which are not enough to meet the particularity requirement under Civ.R. 9(B)."
In its motion for summary judgment, Westfield asserted that Bayes violated their Westfield policy by voluntarily settling the claims of Brent and Ellis Corporation and relinquishing its rights to recover the amounts paid under its Westfield commercial liability policy. In the memorandum in opposition to Westfield's motion for summary judgment, Bayes argued that it settled these claims only after notice to Westfield, after Westfield investigated the claims and after Westfield denied coverage. Therefore, Bayes asserted that it could make a reasonable settlement with the claimants without losing its right to recover on the policy from Westfield. Westfield replied that the material facts demonstrated that it did not deny coverage for the claims; rather, Westfield determined that its insured was not liable for the damage to Brent's hydraulic system.
Bayes also filed a motion for summary judgment. It asserted that the Westfield policy provided coverage under both the general liability insuring agreement and the "products-completed operations hazard" provision and that there was no genuine issue of material fact as to whether Westfield breached those provisions.
Bayes further argued that Westfield's investigation of claim was inadequate; therefore, Westfield's denial of coverage was in bad faith because that denial was not reasonably justified. Bayes claimed that Westfield failed to consider relevant portions of the insurance contract and to ascertain any potential vicarious liability or potential liability due to Bayes' failure to flush the system prior to start up. Westfield filed a memorandum in opposition and Bayes filed a reply.
The trial court also allowed Bayes to file a supplemental motion for summary judgment and the documents in support of that motion. This documentation consisted mainly of Westfield's investigation files. Westfield filed a reply.
On May 31, 2000, the trial court denied Bayes' motion for summary judgment. The court determined that Westfield exercised its right to investigate the claims resulting from the failure of the hydraulic system, and simply found that its insured was not liable for the damages. The court held, in essence, that this was not the equivalent of a denial of coverage for the purpose of finding a breach of contract. The trial court further determined that Bayes "has not shown that the actions or inactions of defendant in investigating the claim would constitute bad faith." The court therefore concluded that Bayes violated the terms of the insurance agreement prohibiting an insured from voluntarily paying or assuming the obligations of third party claims and granted Westfield's motion for summary judgment.
We shall first consider Bayes' Assignment of Error C. Bayes contends that its allegations of fraud were sufficient to meet the requisites of Civ.R. 9(B). The rule requires that the circumstances constituting fraud must be stated with particularity. Generally, the requirement of particularity includes "the time, place and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud." Carter-Jones Lumber v.DeNune (1999), 32 Ohio App.3d 430, 433, quoting Baker v. Conlan (1990),66 Ohio App.3d 454, 458.
In the case before us, Count IV of Bayes' complaint states that, during the relevant period, it paid Westfield a premium of $3,758 for liability coverage under the products-completed operations [hazard] provision of its Westfield policy. Bayes further asserted that Westfield's "interpretations" of the policy rendered such coverage "illusory" as products-completed operations was not defined in the policy or any of its endorsements. Bayes therefore alleged that the "collection of a premium" for such coverage was fraudulent.
In reviewing the complaint, we must agree with the trial court. Bayes failed to set forth the content of the false representation or the fact misrepresented. Instead, Bayes points to conduct, the acceptance of the premium, as the fraud. Accordingly, Bayes' Assignment of Error C is found not well-taken.
We shall consider Bayes' Assignments of Error A and B together. Our review of the trial court's denial or grant of summary judgment is denovo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Either Bayes or Westfield can prevail on their respective motions for summary judgment only if: (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law. Civ.R. 56(C); Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, paragraph three of the syllabus.
The dispositive issues as to both motions for summary judgment is whether questions of fact exist with regard to a determination that Westfield breached the insurance contract and that Westfield lacked in good faith in rejecting the claims arising from the failure of the hydraulic system.
Bayes insists that Westfield breached its duty under the insurance contract to fully investigate the claims arising from failure of the hydraulic system and by failing to determine the applicability of all coverages provided in the commercial general liability policy.
The insurance policy in the present case reads, in material part:
"COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
"1. Insuring agreement
 "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or property damage' to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. * * * We may at our discretion investigate any `occurrence' and settle any claim or `suit' that may result." (Emphasis added.)
Insurance policies are generally interpreted by applying rules of contract law. Burris v. Grange Mut. Cos. (1989), 46 Ohio St.3d 84, 89. Thus, when the intent of the parties is evident from the clear and unambiguous language in the provision, the plain language of the provision must be applied. Hybud Equip. Co. v. Sphere Drake Ins. Co. (1992), 64 Ohio St.3d 657, 665; Karabin v. State Auto. Mut. Ins. Co. (1984), 10 Ohio St.3d 163.
Here, under the clear and unambiguous language of the insurance agreement, Westfield has the discretion to investigate a potential claim under the policy. Therefore, contrary to Bayes' assertion, there is no "duty" to investigate claims under the Westfield policy. Nonetheless, "`a policy of liability insurance imposes a duty on the insurer to defend and indemnify the insured against claims of third persons for injuries and losses that arise out of an insured risk, occurrence of which creates potential legal liability for the insured. * * *.'" Motorist Ins. Cos. vBFI Waste Mgmt. (1999), 133 Ohio App.3d 368, 376 (citation omitted.) This duty of "coverage" is determined "by the occurrence of a risk identified in the policy, * * *." Id.
In the present case, Bayes argues, in essence, that Westfield breached its duty of coverage when it did not consider whether the injuries and losses associated with the contamination of the hydraulic system were insured risks, the occurrence of which exposed Bayes to potential liability resulting from them. We agree. In reaching this conclusion, and unlike the trial court, we refuse to accept the incredulous argument that Westfield's denial of the liability of its insured was not a denial of coverage. This is but a distinction without a difference. Rather, Westfield was denying its own liability for coverage under the general commercial liability insurance policy it issued to Bayes.
The evidence offered in support and contra to the motions for summary judgment, revealed that Westfield was aware of the fact that the accident occurred due to particulate matter, specifically mill scale, that washed from the inside of the piping into the hydraulic fluid and damaged the machinery. Westfield also knew that Bayes failed to flush the system before start up and could, therefore, be considered a joint tortfeasor[1]. Accordingly, it was incumbent on Westfield to determine whether the failure of the system was a risk covered under Bayes' liability policy. Westfield denied coverage without doing so, thereby breaching its "duty of coverage." Accordingly, the trial court erred in denying Bayes' motion for summary judgment on this claim.
As to the question of whether Westfield committed the tort of "bad faith" in denying coverage to Bayes, we find that the trial court applied the wrong standard in granting summary judgment to Westfield.
The former standard for determining the tort claim of bad faith arose from the definition of "bad faith" and, therefore, required proof of the element of wrongful intent. Motorists Mutual Insurance Company v. Said
(1992), 63 Ohio St.3d 690, 699. However, this standard was overruled inZoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552. The standard set forth in Zoppo followed prior law by eliminating the wrongful intent element. Id. at 554-55. The Ohio Supreme Court held:
 "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor. (Hart v. Republic Mut. Ins. Co. [1949], 152 Ohio St. 185, 39 O.O. 465, 87 N.E.2d 347, and Staff Builders Inc. v. Armstrong
[1988], 37 Ohio St.3d 298, 525 N.E.2d 783, approved and followed; Slater v. Motorists Mut. Ins. Co. [1962], 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, paragraph two of the syllabus, overruled; Motorists Mut. Ins. Co. v. Said [1992], 63 Ohio St.3d 690, 590 N.E.2d 1228, overruled to the extent inconsistent herewith.)" Id. at the syllabus.
By finding that Bayes failed to offer any evidence of action or inaction on the part of Westfield constituting bad faith, the trial court apparently applied the incorrect standard by interjecting the intent element. Consequently, this claim must also be returned to the trial court for a determination of whether, based on the circumstances, Westfield had a reasonable justification for rejecting said claims.
Finally, Westfield relied on conditions set forth in Bayes' liability policy that precluded Bayes from making voluntary payments on claims and/or required Westfield's agreement to settlement and release as the basis for its motion for summary judgment. The trial court agreed that no question of fact existed as to whether Bayes violated these provisions of the contract.
In discussing the effect of a denial of a claim on the insured's duty to notify and to obtain the consent of his insurer prior to settlement, the Eighth District Court of Appeals stated:
 "It is unreasonable to require that an insured notify its insurance company of a proposed settlement after the insurance company has already informed the insured that they would not provide coverage pursuant to the insurance policy. In the matter sub judice, Insura [the insurer] informed appellant [the insured] that his policy of insurance would not provide coverage, therefore, appellant was essentially on his own. It would be disingenuous, at best, for Insura to deny coverage to its insured and then claim that he was, nevertheless, required to comply with the requirements in his insurance policy." Bakos v. Insura Prop. Cas. Ins. Co. (1997), 125 Ohio St. 548, 557.
The Bakos court therefore held that because the insurer in that case would not provide coverage, leaving its insured to fend for himself, the insurer's refusal constituted a material breach. As a result, the insured could logically assume that he could make a reasonable settlement without prejudicing his rights under the contract, and the insurer's actions, "served to forgo its right to control the litigation." Id. at 558.
As applied to the instant case, Westfield had knowledge of its insured's failure to flush the system before start up. Rather than determine whether this failure was a risk insured under Bayes' policy, Westfield chose to arbitrarily reject the claim by denying liability. While we recognize that this rejection was based upon an expert's opinion, we also strongly believe that the "duty of coverage" requires an insurer to consider all facts within its knowledge in light of the terms of the policy before denying coverage. Because Westfield's action constituted a material breach of the insurance contract, Bayes was free to negotiate its own settlement without prejudicing its rights under that contract. Therefore, the trial court did err in granting summary judgment to Westfield on this issue.
Bayes' Assignments of Error A and B are found well-taken. The judgment of the Lucas County Court of Common Pleas is reversed in part and affirmed in part. This cause is remanded to that court for further proceedings consistent with this judgment. Bayes and Westfield are ordered to pay the costs of this appeal in equal shares.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Melvin L. Resnick, J., and James R. Sherck, J., CONCUR.
[1] Bayes also argues that it is potentially liable under the theory of vicarious liability because of its relationship with Bertsch. However, Bayes failed to offer any facts that would support this theory.