J ones, J.
 

 There is no doubt that confusion exists in the reported cases of this state respecting the authority of insurance agents to waive conditions in life and fire insurance policies.
 

 The contention of counsel for defendant in error, which was evidently sustained by the trial and appellate courts, is based upon the provisions of two
 
 *622
 
 Ohio statutes and their application to life insurance companies. The first is Section 9407, General Code, which provides that in any controversy between the beneficiary and the company the person who solicits an application for insurance shall be regarded as agent of the company and not of the insured. However, this is but placing into statutory form the common-law principle that a soliciting agent, in respect to that particular branch of business intrusted to him, becomes the agent of the principal. Under the provisions of the foregoing section the scope of the soliciting agent’s authority includes the duty not only of soliciting applicants for life insurance, but of reporting to his company the information acquired from applicants relating to their soundness of health. If the applicant has, truthfully and in good faith, supplied such information to the agent, and the agent has wrongfully or fraudulently reported the facts so given him, the soliciting agent becomes the agent of the company, which becomes responsible for such wrongful or fraudulent conduct of its agent in the business intrusted to him. But if the insured fails to disclose facts and conditions, of which he is aware, materially affecting the risk, the insured cannot recover unless the company waives' forfeiture after it obtains knowledge of such undisclosed facts and conditions.
 
 Stipcich
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 277 U. S., 311, 48 S. Ct., 512, 72 L. Ed., 895.
 

 Section 9407, General Code, is somewhat similar to a Florida statute (Comp. Laws, 1914, Section 2765) which states that an insurance agent “shall be deemed to all intents and purposes an agent or representative of such company,” etc. Construing
 
 *623
 
 the Florida statute, the United States Supreme Court held: “The general rule which imputes an agent’s knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal’s interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption — when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith and not as a shield for unfair dealing. ”
 
 Mutual Life Ins. Co. of N. Y.
 
 v.
 
 Hilton-Green, Exrs.,
 
 241 U. S., 613, 36 S. Ct., 676, 680, 60 L. Ed., 1202. In the course of the opinion Mr. Justice McBeynolds said: “Section 2765 of the Florida statutes,
 
 ante,
 
 undertakes to designate as agents certain persons who in fact act for an insurance company in some particular; but it does not fix the scope of their authority as between the company and third persons and certainly does not raise special agents with limited authority into general ones possessing unlimited power.”
 

 In the case of
 
 Mass. Life Ins. Co.
 
 v.
 
 Eshelman,
 
 30 Ohio St., 647, the third proposition of the syllabus reads: “A sub-agent of a life insurance company, appointed to represent it in a particular branch of its business, becomes, in reference thereto, the direct representative of the company, and notice of a fact to him will operate as notice to the company, and it will be bound by acts done by him
 
 in respect to that branch of its business intrusted to him.”
 
 (Italics ours.) In cases relating to fire insurance companies it has been held by this court that where the appli
 
 *624
 
 cant for fire insurance has fully and truthfully made statements relating thereto, and the agent has improperly or fraudulently filled in the statements, or makes a mistake, or wrongfully states the facts which the applicant gave him, the soliciting agent, in that respect, becomes the agent of the company, which is responsible for his mistake.
 
 Union Ins. Co.
 
 v. Mc
 
 Gookey & Moore,
 
 33 Ohio St., 555. The same principle has been applied to life insurance cases.
 
 Insurance Co.
 
 v.
 
 Eshelman, supra.
 
 Commenting upon the rule involved in such cases, Day, J., in the
 
 Mc-Goolcey case,
 
 said on page 565 of 33 Ohio State: “The evidence tends to show that whatever fault there was in the transaction, was wholly that of the agent, not of the insured, but of the company, and that the insured in good faith honestly performed all things by them to be done, to effect a valid insurance.” And again: “Accordingly, the current of the more modern decisions, is, that, where an agent of an insurance company, acting within the general scope of the business intrusted to him as such agent, fills up, in his own language, a written application for insurance, from the statements of the insured, fully and truthfully made, receives the premium and issues a policy, duly executed by the insurer, on such application, the company shall not be permitted, when a loss happens, to defeat the policy by denying the truth of the application, nor the authority of the agent in the transaction, although he has transcended his authority, unless the insured is chargeable with knowledge of his having exceeded his authority.”
 

 Some of the decisions in this state relied upon by counsel for defendant in error relate to powers of
 
 *625
 
 fire insurance agents, and their authority to waive certain provisions in fire insurance policies solicited, executed, and delivered by them. Section 9586, General Code, provides that an agent who solicits fire insurance shall be held to be the agent of the company. Section 9583, General Code, requires agents of this class of insurance to examine the buildings or structures insured and
 
 to fix their insurable value.
 
 It has therefore been held that under the peculiar provisions of that statute, requiring the company’s agent to inspect buildings and structures and to fix their insurable value, the company becomes responsible for the acts of its agent if there be no intentional fraud on the part of the insured.
 
 Queen Insurance Co.
 
 v.
 
 Leslie,
 
 47 Ohio St., 409, 24 N. E., 1072, 9 L. R. A., 45;
 
 Webster
 
 v.
 
 Dwelling House Ins. Co.,
 
 53 Ohio St., 558, 42 N. E., 546, 30 L. R. A., 719, 53 Am. St. Rep., 658. So that when we consider the broader statutory powers conferred on a fire insurance agent in comparison with the more limited powers exercised by soliciting agents of life insurance companies, this distinction cannot be overlooked. Those two classes of insurance are clearly distinguishable. The case of
 
 Foster
 
 v.
 
 Scottish Union & National Ins. Co.,
 
 101 Ohio St., 180, 127 N. E., 865, cited and relied upon by counsel for defendant in error, related, not to life, but to fire insurance companies, where the powers conferred on their agents are much broader — made so by statute and custom. The case of
 
 Ohio Farmers Ins. Co.
 
 v.
 
 Cochran,
 
 104 Ohio St., 427, 135 N. E., 537, likewise is a fire insurance case. The agents of fire insurance companies ordinarily have the right to bind their companies before they actually issue the policy, to attach
 
 *626
 
 riders thereto, to make deliveries thereof, and to pass upon the insurability of the property. They are clothed with powers not given to mere soliciting agents, who are employed to sell life insurance but have no authority to pass upon the insurability of the applicants. The Legislature of the state, on April 22,1908, adopted an act providing for standard forms of life insurance policies. Its provisions are now embodied in Section 9412
 
 et seq.,
 
 General Code. In each of such policy forms, covering various forms of insurance, the law authorizes the placing of the following stipulation: “Agents are not authorized to modify this policy or to extend the time for paying a premium.” The act does not apply to industrial policies, and we allude to it for the purpose of disclosing a legislative policy sanctioning such a safeguarding provision in life insurance policies. The policies in the instant case contained a similar provision. The provision was not pleaded in this case as a defense, and we refer to the foregoing to stress the fact that as to the usual standard policies of life insurance the lawmaking body authorized the insertion therein of such provision preventing agents from modifying the written life policy contract.
 

 Counsel for defendant in error also relies upon Section 9391, General Code, which reads as follows: “No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bar the right to recover upon any policy issued thereon, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is wilfully false, was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy
 
 *627
 
 would not have been issued; and, also that the agent or company had no knowledge of the falsity or fraud of such answer.” It will be noted that the last clause of this statute provides that to avoid liability upon its policy it must be proven that the agent of the company had no knowledge of the falsity or fraud of the answer. Said section, formerly Section 3625, Revised Statutes, was in existence when the case of
 
 Metropolitan Life Ins. Co.
 
 v.
 
 Howie,
 
 62 Ohio St., 204, 56 N. E., 908, was decided, the second proposition of the syllabus reading as follows: “Where a life insurance policy contains a condition to the effect that no obligation is assumed by the company, unless at the date of the policy the insured is alive and in sound health, there can be no recovery upon such policy if it is made to appear upon the trial that the insured was not in sound health at the date of the policy.” That case was not overruled by this court, though it is claimed that it has been overruled by implication. If the insured cannot recover if it is proven that he was not in sound health at the date of the policy, there is certainly less reason for permitting recovery if it be proven, in addition, that the insured knew he was not in sound health at that date. The ease also holds that the section does not apply to conditions in the policy itself, but to answers found in the application. While there was evidence tending to prove that an application with answered interrogatories accompanied these policies, neither the application nor the answers to interrogatories are contained in this record.
 

 But assuming that the policies in question were issued upon the false statements in the application of the insured, touching his health, we come to the con
 
 *628
 
 sideration of the question: "Who is included within the term “agent” within the meaning of Section 9391, General Code ? The statute does not define it, nor does it use either of the terms, ‘‘soliciting agent” or ‘ ‘ subagent. ’ ’ The term ‘ ‘ agent” should therefore be given its natural and legal meaning, that given it by the courts, and derived from the principles of the common law. In the absence of statutory definition, it includes a soliciting or other agent, authorized to act “in respect to that branch of its business intrusted to him.”
 
 Mass. Life Ins. Co.
 
 v. Eshelman,
 
 supra.
 
 This principle was announced in the syllabus in the case of
 
 Myers
 
 v.
 
 John Hancock Mutual Life Ins. Co.,
 
 108 Ohio St., 175, 140 N. E., 504, 507, where the judge delivering the opinion, distinguishing the
 
 Foster case, supra,
 
 said of the latter case: “There the agent whose act was in question was fully authorized to act and make an election or waive a condition, and it was that agent also who had the knowledge affecting the waiver or election. In the instant case the agent had nothing whatever to do with the contract and no power whatever to act on behalf of the company.” What was said in the
 
 Myers case, supra,
 
 may be applied to this' case. Cugliari was only a soliciting agent. There was no proof that he had any other authority — none to waive material conditions in the policy he sold. Under the instruction of the trial court the knowledge of any and every agent of the company would become the knowledge of the company binding the company even if both agent and insured were defrauding the company. In so charging the trial court erred.
 

 In the instant case it appears that Cugliari’s duties were to solicit policies and to make inquiries regard
 
 *629
 
 ing the health of the applicant; but there was another agent, superior to Cugliari, who later made the same inquiry. This agent was one Martin, the assistant district manager. There is a dearth of testimony relating to the duties or authority of Martin, and we give that feature no consideration as it is not claimed that the agent Martin had any knowledge of the insured’s condition of health. It appears that no medical examination is required as a prerequisite to the issuance of industrial policies. This furnishes one reason why good faith should be required on the part of the applicants for insurance in respect to their soundness of health; they are not subject to physical examination.
 

 The insured had twice been in tubercular hospitals ; both insured and beneficiary had knowledge of these facts; and although Cugliari, the soliciting agent, denied it, under the finding of the jury he also had knowledge of these facts. This is an extreme case, perhaps more so than any found in the reports; but our system of jurisprudence requires the adoption of a fixed rule controlling every case that falls within its scope. To test its scope counsel for the insured was asked, during oral argument, whether, under like circumstances, had the soliciting agent canvassed patients in the many tubercular hospitals of this state, would the insurance company have been bound by the acts of that agent? He answered that it would, and in that he was logically consistent. May a crafty, dishonest soliciting agent roam the state seeking and insuring those afflicted with tuberculosis, or other serious disease, and bind the company because he had knowledge of the disease? If such were permitted in defiance of the provisions in
 
 *630
 
 the policy, that ‘ ‘ agents are not authorized to modify this policy,” it might lead to the bankruptcy of the company; at most, it would deplete its reserves, which are held for the protection of innocent applicants. The policy contained a proviso that it should not take effect unless the insured “shall be alive and in sound health.” Had the insured not been alive, and had the agent known it, can it be claimed that the agent’s knowledge would make the company liable? Under the terms of the policies, life and sound health must both subsist before, the policies take effect. Nor should legislative policy sanction, or court decision encourage, a scheme which would lead to the perpetration of a fraud upon the company by connivance of its soliciting agent and the insured; much less should they countenance such perpetration where the agent’s power is limited solely to canvassing applicants for insurance and reporting his information to his company.
 

 The federal case referred to,
 
 Mutual Life Ins. Co.
 
 v.
 
 Hilton-Green, supra,
 
 is apropos to the case at bar, where the following proposition appears in the syllabus :
 

 “One consciously permitting an application containing material misrepresentations to be presented by subordinate agents to officers of a life insurance company, under circumstances which he knows negatives any probability of the actual facts being revealed, and later accepting policies which he knew were issued in reliance upon statements both false and material, can claim nothing under such policies.
 

 “An applicant for insurance should exercise toward the company the same good faith which he
 
 *631
 
 may rightfully demand from it; the relationship demands fair dealing by both parties.”
 

 If it should be proven that both the insured and the soliciting agent connived for the purpose of defrauding the company, there can be no recovery.
 

 In special request No. 1 the court charged that if the agent knew “or had been told of any or all of these facts” touching his soundness of health, or of his being in a tubercular hospital, then the verdict of the jury should be for the plaintiff. Section 9391, General Code, requires, not notice, but knowledge on the part of the agent. Notice is not knowledge. The fact that some one may have told the agent that the insured was not in sound health, or the fact that the agent had learned it by hearsay, does not necessarily constitute knowledge within the purview of said section ; and the court erred in charging as it did. Under the facts disclosed by this record it became the duty of the trial court to have sustained the defendant’s motion for a directed verdict; and in not doing so the trial court erred.
 

 For the reasons stated the judgments of the lower courts will be reversed, and final judgment will be entered in favor of the plaintiff in error.
 

 Judgment reversed and final judgment for plaintiff in error.
 

 Marshall, C. J., Matthias, Day and Kinkade, JJ., concur.
 

 Allen and Robinson, JJ., concur in the judgment.