## MASSACHUSETTS MUT. LIFE INS. CO. v. COHEN, FRIEDLANDER & MARTIN CO.

### Civ. No. 5491.

District Court, N. D. Ohio, W. D.

Feb. 14, 1947.

John W. Winn and Ross Shumaker (of Fraser, Shumaker, Kendrick & Winn), both of Toledo, Ohio, for plaintiff.

George R. Effler, of Toledo, Ohio, for defendant.

KLOEB, District Judge.

A brief statement of the pertinent facts will suffice.

On August 29, 1945, Hyman Blitz, an officer of the defendant company, and Lyle C. Remdt, the Secretary-Treasurer of the company, made application to the plaintiff insurance company for $40,000 of life insurance upon the life of Mr. Blitz, for the benefit of the defendant company.

In this application, the following question was asked of Mr. Blitz and answer given: "Have you had at any time pain, pressure or discomfort in the chest, shortness of breath, palpitation, or any disease of the heart?" Answer: "No".

The application provided that it should form a basis to the contract applied for and should become a part of the contract when issued. It further provided that the insurance applied for should not become effective until the company had approved the application, the policy had been delivered, and the first premium paid, and that thereupon the insurance was to become effective from the date of issue stated in the policy, which was August 10, 1945.

The first premium did not accompany the application, but was paid by Mr. Remdt upon delivery of the policy.

In due course, Mr. Blitz underwent a physical examination at the hands of the company's physicians, and this application was forwarded to the company for further inquiry and scrutiny by its assistant secretary and its associate medical director.

On September 17, 1945, the application was approved, and the policy was issued and mailed to the soliciting agent of plaintiff company in Toledo, Ohio. On September 19, the agent took the policy to the office of the defendant company, and there inquired of Mr. Remdt concerning the whereabouts of Mr. Blitz. Mr. Remdt informed the agent that Mr. Blitz was still in New York, and made no other disclosures. Whereupon, the policy was delivered by the agent to Mr. Remdt, and Mr. Remdt delivered to the agent the company's check for $4,910 in payment of the first annual premium.

Immediately after Mr. Blitz had signed the application, he left for New York City on a buying trip, accompanied by certain officers of the defendant company. On September 12, 1945, he suffered a severe heart attack, known medically as angina pectoris, with coronary thrombosis, and a posterior wall myocardial infarction. He was taken from the hotel New Yorker to the Park East Hospital in New York City on the same day. On September 17, at the hospital, he suffered another heart attack similar to the one suffered on September 12th. Between September 12th, and September 19th, he lay in the hospital in a critical condition. Mr. Blitz died on March 31, 1946, in St. Vincent's Hospital, Toledo, Ohio, following a third similar heart attack.

Prior to September 17, 1945, the principal officers of the defendant company, including the Secretary-Treasurer, Lyle C. Remdt, were fully informed of the heart attack and of the critical condition of Mr. Blitz. Mr. Remdt knew all of the facts surrounding the collapse of Mr. Blitz, the nature of the attack, and the fact that he was confined in the hospital in New York City on September 19, at the time that he accepted the insurance policy and delivered therefor the check of the company in payment of the first annual premium.

Plaintiff company received its first information concerning the heart attack suffered by Mr. Blitz when the proof of death was filed on April 18, 1946.

The assistant secretary and the associate medical director of the plaintiff company, who had examined and approved the appli-

cation, both testified that, had they known of the heart attack suffered by Mr. Blitz on September 12, 1945, they would not have approved the application and ordered the issuance of the policy.

Plaintiff notified defendant of cancellation of the policy, made tender of the premium paid, with interest, and upon refusal to accept the same filed its complaint herein. It seeks a judgment dismissing the counterclaim of the defendant, and declaring the policy null and void, and ordering its cancellation.

The facts of this case come squarely within the facts of Stipcich v. Metropolitan Life Insurance Company, 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895. It is unnecessary to quote from that opinion. A study of that case will satisfy the reader that the facts of the case cannot be differentiated from the instant case. The principles of law laid down in the Stipcich case are controlling in the instant case.

The case of New York Life Ins. Co. v. Gay, 36 F.2d 634, and 48 F.2d 595, certiorari denied 284 U.S. 624, 52 S.Ct. 10, 76 L. Ed. 532, decided by the Sixth Circuit Court of Appeals on December 13, 1929, and April 10, 1931, is controlling. The facts in the instant case are substantially the same as in the Gay case, except that, in the latter case, the first premium accompanied the application.

No Ohio case has been cited; and the Court has been unable to find one, where the facts are substantially in accord with the facts in the instant case. However, in the case of John Hancock Mutual Life Ins. Co. v. Luzio, 123 Ohio St. 616, at page 622, 176 N.E. 446, 449, the Supreme Court of Ohio has this to say: "* * * But if the insured fails to disclose facts and conditions, of which he is aware, materially affecting the risk, the insured cannot recover unless the company waives forfeiture after it obtains knowledge of such undisclosed facts and conditions. Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895."

Part of paragraph 5 of the syllabus, 123 Ohio St. at page 617, 176 N.E. at page 451, reads as follows: "An applicant for life insurance should exercise toward the company the same good faith which he may rightfully demand from it; the relationship demands fair dealing. * * *"

There can be no question but that the Supreme Court of Ohio stands squarely in line with the Stipcich and the Gay cases in holding that a contract of life insurance is a contract "uberrimæ fidei", and requires the applicant to disclose facts material to the risk up to the time that the contract is consummated through delivery and payment therefor.

In the case at bar, there can be no question but that the contract was not to be consummated until the policy was delivered and the first premium paid therefor. This occurred on September 19, 1945, at the offices of the defendant company. The terms of the application signed by the defendant provided specifically for such date of consummation. The application by its terms became a part of the contract when issued. Regardless, however, of whether such conditions were specifically written into the contract, the good faith required in the application for and the issuance of the policy of life insurance should have prompted Mr. Remdt to have disclosed to the agent of the company on September 19, 1945, the precarious condition of health at that time sustained by Mr. Blitz in New York City. Without such disclosure, the insurance company, of course, was justified in believing that the heart condition of the applicant was normal, in accordance with the answer given in the application.

The Golden Rule is an unlisted, but yet a very pertinent rule of equity that has particular application where the contract at issue is one "uberrimæ fidei". 2 Bouv. Law Dict., Rawle's Third Revision, p. 3345, defines the Latin term "uberrima fides" as follows: "(Lat. most perfect good faith). A phrase used to express the perfect good faith, concealing nothing, with which a contract must be made; for example, in the case of insurance, the insured must observe the most perfect good faith towards the insurer. 1 Story, Eq. Jur. § 317."

The situation we find here is shocking to the conscience. It presents a bold attempt to exchange $4,910 for $40,000 with the defendant in possession of all the facts and the

plaintiff wholly ignorant of the material fact that Mr. Blitz, on whose life the so-called "risk" was to be taken, was at the time virtually on his death bed.

Good law is but a reflection of good conscience. When it ceases to be such, then it is no longer good law for an enlightened society. Good conscience, as well as good law, here requires the cancellation of the contract.

As prayed for, judgment may be entered dismissing the counterclaim of the defendant, declaring the policy null and void, and its cancellation ordered.

Plaintiff may, within ten days, file its Findings of Fact and Conclusions of Law, drawn in accordance with this opinion. The defendant, within five days thereafter, may file its exceptions or suggested additions thereto.