Weygandt, C. J.
This controversy involves the fraudulent misconduct of an individual named Russell who was a duly licensed agent of the defendant insurance company and sold the plaintiff his two policies.
The defendant refuses repayment to the plaintiff for several reasons.
The defendant insists that under the provisions of each policy, all premiums were payable either at its home office in Chicago or to a duly authorized agent; that the plaintiff violated the terms of his policies by making his payments to Russell; that neither policy provides for a so-called premium deposit fund; that the plaintiff made his fund payments to Russell as was done with the policy premiums; that, although Russell remitted the policy premiums to the defendant company, he remitted no fund payment to the company; that the company had no knowledge of the existence of the alleged premium deposit fund; that Russell was a mere soliciting agent; that as such soliciting agent he was without authority to establish such premium deposit fund or to receive payments therefor; that for a period of over ten years the plaintiff failed to inform the defendant company of the existence of the alleged premium deposit fund; and that the plaintiff is guilty of laches and is now estopped from making this claim.
In rendering a judgment for the plaintiff, the trial court said in part:
“Was Russell the agent of the defendant at the time this *517 transaction took place? Was lie clothed with the apparent authority to do what he did?
“In accepting the theory of the defendant in this case one must conclude that Russell was a fraud. Accepting this conclusion, the inquiry then would be — can a principal clothe an agent with authority, ratify some of his acts in dealing with the plaintiff and then say with respect to certain other acts which are standard in the insurance business that he knew nothing about them and that the receipts given are not on the proper forms Avhich the defendant used and that the signer thereof is not one of their employees?
“The plaintiff had no notice of any irregularity and was entitled to rely upon the apparent authority of Russell who Avas an authorized agent.
“Just in passing, the court noted the absence of any witnesses who Avere in fact the immediate superiors of Russell.”
In reaching its contrary conclusion, the Court of Appeals summarized :
“The unfortunate circumstance in this case is that Scott misplaced his confidence in Russell. We can understand how the friendship betAveen the two men made this possible. However, as stated in the fifth paragraph of the syllabus in the Luzio case, supra: ‘An applicant for life insurance should exercise towards the company the same good faith which he might rightfully demand from it; the relationship demands fair dealing.’ It Avas Russell who betrayed his friend. The company knew nothing of Russell’s perfidy. Scott could have avoided this entire situation by reading his policies and following their terms. In any event, if, in attempting to establish the so-called ‘premium deposit fund,’ Scott had made his checks payable to the insurance company, Russell Avould have been exposed.”
There is no dispute concerning the provisions of the two policies to the effect that all premiums were payable either at the defendant company’s home office in Chicago or to a duly authorized agent. However, the plaintiff insists that the defendant consistently disregarded the terms of its own policies for a period of 14 years and thereby established a course of *518 dealing which now estops it from asserting that its duly licensed agent was without authority to accept the various payments made by the plaintiff. The plaintiff relies on the fact that as early as 1932 he had purchased several policies from the defendant company through its agent Russell and for 14 years thereafter had made every payment to Russell either in cash or by check. In each instance the premium was accepted by the defendant company and credited to the plaintiff’s policies. This procedure continued until 1946 when the company sent the plaintiff a card telling him to make his checks payable to it, and he did so. However, it was in 1940 while the old procedure was still in operation that agent Russell suggested the idea of the so-called special premium deposit fund to be used whenever the plaintiff might default in meeting a policy premium. The plaintiff accepted the offer and gave agent Russell two checks for the total sum of $5,436.70, as requested by Russell. In return, Russell gave the plaintiff two receipts on printed forms containing the name of the defendant company and having the appearance of being genuine. But the defendant insists that they are in fact not genuine; that they contain the signature of an individual not a company officer; and that Russell did not remit the money to his company as he had done regularly with the previous policy premiums.
In its opinion the Court of Appeals concluded that “the unfortunate circumstance in this case is that Scott misplaced his confidence in Russell.” That, of course, is true, but it is not the only unfortunate circumstance. Another obviously is that the defendant company, too, misplaced its confidence in Russel] when it employed him as its agent, and it was this employment and authority that made it possible for Russell to defraud both the company and the plaintiff Scott. Hence, it was the company and not Scott who started the chain of circumstances which eventually enabled Russell to perpetrate the fraud.
But, as previously observed, the defendant insists that Scott should have complied with the provisions of his policies by making his payments to the defendant company instead of to Russell, although it concedes that Russell was authorized to receive payment of the first premium on each policy. And it in *519 sists, too, that the two receipts received by Scott are fraudulent although on printed forms containing the name of the company and having the appearance of genuineness. But, in any event, the fact that Russell was in possession of the printed forms— spurious or genuine — was not the fault of Scott, and for a total period of 14 years the company consistently condoned Scott’s practice of making all payments to its agent Russell. Under these circumstances can. the company now be heard to insist that Russell was a mere soliciting agent without apparent authority to accept payments intended for the company?
The trial court answered this question in the negative, and this court so holds.
The defendant, as did the Court of Appeals, relies on the decision of this court in the case of John Hancock Mutual Life Ins. Co. v. Luzio, 128 Ohio St., 616, 176 N. E., 446. In the fifth paragraph of the syllabus it was held:
“5. An applicant for life insurance should exercise towards the company the same good faith which he may rightfully demand from it; the relationship demands fair dealing. If it should be proven that the insured and the soliciting agent connived for the purpose of defrauding the company, there can be no recovery. ’ ’
This illustrates the contrast between that case and the instant one. There the insured and the agent attempted to conceal from the company the facts concerning the insured’s condition of health. Here there is no evidence that the insured attempted to conceal anything from the company during the entire period of 14 years during which Scott made all his payments to agent Russell,
The defendant relies, too, as did the Court of Appeals on the decision of this court in the case of Union Central Life Ins. Co. v. Hook, 62 Ohio St., 256, 56 N. E., 906, in which the agent and the insured, without the knowledge of the company, entered into a parol agreement to waive payment of an annual premium. In the instant case there is no contention that Scott did not pay his premiums when due or that the premiums were not paid in a manner known and condoned by the company for a period of 14 years. Furthermore, in his opinion in the Hook case, Davis, J., said:
*520 “We do not decide that there might not be an estoppel by conduct * * *. But that case does not arise here.”
Scott made his payments for the so-called premium deposit fund in precisely the same manner as the premium payments for a period of 14 years, and it is the view of this court that under the circumstances of this case the company is estopped from avoiding liability for any payments so made.
The judgment of the Court of Appeals is reversed and that of the Court of Common Pleas is affirmed.

Judgment reversed.

Matthias, Bell and Herbert, JJ., concur.
Zimmerman, Stewart and Taet, JJ., dissent.