MAHONING ASSOCIATES, INC., APPELLANT, *v.* THE OHIO NATIONAL LIFE INS. CO., APPELLEE.

[Cite as Mahoning Associates v. Ohio Natl. Life Ins. Co. (1971), 29 Ohio App. 2d 282.]

(No. 5006—Decided February 2, 1971.)

*Mr. Martin S. Goldberg* and *Mr. Fred C. Lanz,* for appellant.

*Mr. John H. Ranz,* for appellee.

LYNCH, P. J. In this case, plaintiff corporation, appellant herein, seeks to recover $150,000 under a policy of insurance on the life of Oscar Rosenberg upon which it claims defendant insurance company, appellee herein, obligated itself. The insured was killed August 20, 1968, in an automobile accident.

At the conclusion of the trial, when all the evidence was presented by both sides, the trial court sustained a motion by defendant for a directed verdict in favor of defendant. Plaintiff is appealing on questions of law.

Plaintiff corporation had entered into a written agreement with Oscar Rosenberg, dated June 19, 1968, to lease a motel and restaurant in Valparaiso, Indiana, which plaintiff corporation had agreed in writing to purchase on the same day, to him. One of the conditions to the agreement with Mr. Rosenberg was the obtaining of a life insurance policy on the life of Mr. Rosenberg under standard rates of insurance in the amount of not more than $175,000, the cost of which was to be borne by plaintiff, and the beneficiary of which was to be plaintiff.

On June 12, 1968, Fred Lanz, plaintiff's attorney had contacted Lamar Jacobs, the local soliciting agent of defendant, and asked Mr. Jacobs to process an application for insurance on Mr. Rosenberg's life for $150,000 at standard rates. Mr. Jacobs contacted Mr. Rosenberg, obtained the necessary information to fill out the insurance application, and mailed it to Mr. Rosenberg at Valparaiso, Indiana, who signed the application and returned it to Mr. Jacobs. Mr. Jacobs, then, obtained the signature of Charles Blunt, plaintiff's president, to this application, on June 19, 1968, and forwarded it to his company. Mr. Jacobs arranged for Mr. Rosenberg to have a medical examination for this insurance, on July 13, 1968.

On July 25, 1968, Mr. Jacobs received a notice from defendant that it wanted additional blood pressure information and a urine specimen from Mr. Rosenberg. Mr. Jacobs advised Mr. Rosenberg of this fact, but Mr. Rosenberg never reported for the additional medical examina-

tion, and defendant never issued a policy on Mr. Rosenberg's life prior to his death.

The application for the policy at issue specifically provides that any policy applied for shall not become effective unless and until it is delivered to the applicant and the full first premium is paid during the lifetime of the proposed insured and that no agent is authorized to make or alter contracts, to extend the time for payment of premiums, or to waive any of the company's rights or requirements. Mr. Blunt, plaintiff's president, not only had signed Mr. Rosenberg's application for the policy at issue but had also signed a similar application for a policy on his life for $250,000, dated April 8, 1968, payable to plaintiff. Mr. Lanz, plaintiff's attorney, also signed Mr. Blunt's application. We agree with the finding of the trial court that officers of plaintiff's company were aware of the above provisions in the insurance application signed by Mr. Rosenberg.

The evidence established that no premium was paid, and no policy was ever issued by defendant on the life of Mr. Rosenberg. We agree with the conclusion of the trial court that ordinarily under these circumstances there would be no insurance contract, and the insurance company would not be liable.

However, plaintiff contends that the provisions in the insurance application that the policy shall not become effective unless and until it is delivered to the applicant and the first full premium is paid during the lifetime of the insured was waived by the agent of defendant, and that plaintiff relied on said waiver and expended $225,000 for the purchase of the motel and restaurant in Valparaiso, Indiana, to its detriment.

After Mr. Rosenberg had taken his medical examination on July 13, 1968, Mr. Jacobs contacted various officers of plaintiff and advised them of this fact. Plaintiff's officers testified that Mr. Jacobs further stated that the policy was in force from the time that Mr. Rosenberg took the physical examination. Mr. Jacobs denied making such a statement.

Mr. Jacobs had advanced the premium out of his own funds on the previous insurance policy on the life of Mr. Blunt, and plaintiff's officers testified that they assumed that Mr. Jacobs would do the same on this policy; however, there was no evidence that Mr. Jacobs specifically agreed to advance the premium out of his own funds for the policy at issue.

Plaintiff contends that it relied on Mr. Jacob's statement that the policy on the life of Mr. Rosenberg was in effect, and signed an agreement to purchase the real estate in Valparaiso, Indiana, for $225,000, on August 1, 1968.

There was an agreement signed on June 19, 1968, between plaintiff and the owners of this real estate that appears on its face to be a binding agreement on plaintiff to purchase the property. However, plaintiff introduced evidence that this was an option to purchase rather than the final agreement. Neither agreement with the owners of the real estate mentioned anything about an insurance policy on the life of Mr. Rosenberg, and Mr. Jacobs testified that he did not know anything about the agreement with the owners of such real estate.

Assuming that there was sufficient evidence to go to a jury as to whether Mr. Jacobs made statements that led plaintiff's officers to believe that the insurance policy on Mr. Rosenberg's life was in effect and that relying on this understanding they completed the purchase of the motel and restaurant (even though plaintiff's evidence would indicate that plaintiff had committed itself to purchase this property independent of the policy on Mr. Rosenberg's life), we conclude that no insurance contract was completed between plaintiff and defendant. One obvious defect is that there was no consideration to bind defendant on the policy. The consideration to defendant insurance company for the policy was the payment of a premium. This was clearly stated on the application, and plaintiff's officers were aware of this written statement.

Plaintiff specified that they wanted an insurance policy at standard rates. The evidence clearly indicates that Mr. Rosenberg could not have qualified for standard rates. As

a matter of fact, defendant's testimony was to the effect that they probably would not have issued a policy on the life of Mr. Rosenberg on any basis because of his physical condition and medical history.

One of the first steps in negotiating an insurance policy on Mr. Rosenberg's life would have been the determination of the amount of the premium on such a policy, but there is no evidence that an agreement on this point was concluded between plaintiff's officers and defendant company.

Defendant's application for insurance had a "Conditional First Premium Receipt" attached, which provided that if the applicant would pay the first full premium and if the company was satisfied that the insured was acceptable under its rules as a risk, then the policy applied for would be in effect from the date of the application or the date of the physical examination, whichever is later. If plaintiff desired to have this insurance policy go into effect before August 1, 1968, this was the procedure that defendant company had provided for such a contingency. However, plaintiff did not take advantage of this procedure.

Plaintiff's witnesses testified that Mr. Jacobs verbally agreed to an insurance binder on the life of Mr. Rosenberg. The Ohio Supreme Court has pointed out that there is a difference between life insurance and fire or liability insurance. *John Hancock Mutual Life Ins. Co.* v. *Luzio*, 123 Ohio St. 616. In fire and liability insurance, agents have the authority to underwrite risks and to bind companies before the policies are actually issued, but applicants become immediately obligated to pay the premiums. A written application for fire or liability insurance is not made. However, in Ohio a written application for life insurance is required by law, and the application in this policy clearly stated that the agent could not waive the time for payment of the premium.

We question how Mr. Jacobs could have committed his credit to the payment of the premium which had not

been determined by his company at the time of the death of Mr. Rosenberg. Mr. Jacobs actually never committed his credit to the payment of the premium on this proposed policy; therefore, the most that he could have done was to have promised plaintiff to commit his credit for this purpose.

Assuming that he made such a promise, a question arises as to how Mr. Jacobs could have fulfilled such a promise prior to the death of Mr. Rosenberg when his company never made a determination as to the amount of such premium because of Mr. Rosenberg's physical condition and medical history.

However, assuming that a payment of a premium on this policy at standard rates might have had some effect, the promise of Mr. Jacobs to advance his credit for the payment of the premium on this policy would have obviously been for the benefit of plaintiff rather than defendant.

There is no evidence that defendant ever received any money from Mr. Jacobs as a premium on this policy or any notice from Mr. Jacobs to deduct this premium from Mr. Jacob's funds held by defendant. Obviously, defendant received no benefit from Mr. Jacobs' unfulfilled promise to pay this premium—if he ever made such a promise. Such a promise exceeded Mr. Jacobs' authority as an agent under the circumstances of this case, and plaintiff's officers were aware of this because of the statements on the insurance application.

The evidence revealed that plaintiff filed a similar application, dated October 24, 1969, with defendant for an insurance policy on the life of Robert Erwin Allan for $200,000. Defendant company approved the application but plaintiff refused to accept the policy when defendant offered it to plaintiff. If plaintiff is not bound to complete an insurance contract with defendant company until the premium is paid, then, in like manner, defendant insurance company should not be bound on an insurance policy until a premium is paid.

We hold that any statements Mr. Jacobs may have made to plaintiff did not satisfy the essential requirement of the insurance contract that defendant must receive the consideration of a premium payment before the life insurance policy would be effective. We feel the requirement that the premium must be paid before an insurance policy is effective and that no agent can waive such requirement is not only reasonable but essential to the operation of its business. See *Veser* v. *Guardian Life Ins. Co.*, 50 Ohio App. 340.

*Judgment affirmed.*

O'NEILL and JOHNSON, JJ., concur.